UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRIDGETTE R.,

      Plaintiff,

      v.

FRANKLIN J. BISIGNANO, Commissioner
of Social Security

      Defendant.

No. 25 CV 7833

Judge Manish S. Shah

MEMORANDUM OPINION AND ORDER

Plaintiff Bridgette R.[1] appeals the Social Security Commissioner's denial of her application for disability insurance benefits. Because the administrative law judge failed to conduct the required analysis in determining whether plaintiff's fibromyalgia was a medically determinable impairment, I grant plaintiff's motion and remand to the administrative law judge for further findings.

I.    **Legal Standards**

The Appeals Council declined review, making the administrative law judge's decision final under the Social Security Act. 42 U.S.C. § 405(g); *Wilder v. Kijakasi*, 22 F.4th 644, 650 (7th Cir. 2022).[2] Judicial review of Social Security decisions is deferential; I must affirm if the ALJ applied the law correctly and supported his

---

[1] I refer to plaintiff by her first name and the first initial of her last name to comply with Internal Operating Procedure 22.

[2] Only a "final decision" made by the Social Security Commissioner is subject to judicial review. 42 U.S.C. § 405(g). A ruling by the Appeals Council is considered a final decision. 20 C.F.R. § 416.1481; *see also* 42 U.S.C. § 405(a) (the Commissioner has broad authority to create rules and regulations to enact social security laws).

decision with substantial evidence. *See Swiecichowski v. Dudek*, 133 F.4th 751, 756 (7th Cir. 2025). Substantial evidence is not a high threshold. *Id.* It means "such relevant evidence as 'a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)).

## II.    Background

Bridgette R. suffered from osteoarthritis, depression, and anxiety. [6-1] at 28.[3] Plaintiff also alleged a history of breast cancer, acute kidney infection and non-traumatic rhabdomyolysis, urinary tract infection, opiate/opioid dependency, and chronic obstructive pulmonary disease. *See, e.g.*, [6-1] at 29–30. Plaintiff also alleged a history of fibromyalgia. *See, e.g.*, [6-1] at 36. In September 2021, plaintiff applied for disability insurance benefits, alleging disability starting September 28, 2021. [6-1] at 26. The Social Security Administration denied her application—initially and upon reconsideration—before plaintiff appeared for a hearing before an ALJ in March 2024. [6-1] at 26. In April 2024, the ALJ issued an unfavorable decision, concluding that plaintiff was not disabled during the relevant period. [6-1] at 23–42.

The ALJ used the agency's five-step sequential analysis to determine plaintiff's disability status. *See* 20 C.F.R. § 404.1520. This process requires the ALJ to consider "whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude

---

[3] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy." *Wilder*, 22 F.4th at 651 (citation omitted). The claimant bears the burden of proving disability at steps one through four, then the burden shifts to the Commissioner at step five. *Id.*

Plaintiff takes no issue with the ALJ's findings at the first step. The ALJ found that plaintiff had not engaged in substantial gainful activity since September 28, 2021. [6-1] at 28. At step two, the ALJ found that plaintiff had severe impairments, including osteoarthritis, depression, and anxiety. [6-1] at 28–29. Plaintiff says, however, that the ALJ did not properly assess her alleged fibromyalgia. [12] at 3. The ALJ found that plaintiff's alleged fibromyalgia was not a medically determinable impairment. [6-1] at 36. Plaintiff does not take issue with the ALJ's finding at step three: that she did not have an impairment or combination of impairments that met or medically equaled a conclusively disabling impairment. [6-1] at 30–33.

Because plaintiff had severe impairments under step two but these impairments were not conclusively disabling under step three, the ALJ proceeded to determine her residual functional compacity. [6-1] at 33–40. Residual functional capacity is an assessment of a claimant's ability to do sustained work-related physical and mental activities despite limitations from her impairments. *See* 20 C.F.R. § 404.1545.

3

The ALJ determined that plaintiff had the residual functional capacity to perform light work in accordance with 20 C.F.R. § 404.1567(b), subject to the following exceptions: Plaintiff could "lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, and has no limitations in her ability to sit, stand, or walk throughout an eight-hour workday. The claimant can occasionally climb ramps and stairs, and she can occasionally stoop, kneel, balance, crouch, and crawl, but she can never climb ladders, ropes, or scaffolds. The claimant can perform fine and gross manipulation frequently but not constantly. The claimant is limited to working in non-hazardous environments (i.e., no driving at work, operating moving machinery, working at unprotected heights), and she should avoid concentrated exposure to unguarded hazardous machinery. The claimant can understand, remember, and carry out simple instructions. The claimant can use judgment to make simple work-related decisions. The claimant can tolerate occasional interaction with supervisors and coworkers. The claimant can tolerate no interactions with the general public. The claimant cannot perform work requiring a specific production rate, such as assembly line work, but can tolerate end-of-day quotas. The claimant can deal with occasional changes in a routine work setting." [6-1] at 33.

In determining plaintiff's residual functional capacity, the ALJ considered her reported symptoms and the objective medical evidence, and "the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." [6-1] at 33. The ALJ also considered medical opinions and prior administrative medical findings. [6-1] at 33. Plaintiff alleged she could not

4

work due to severe osteoarthritis in her hands, elbows, knees, and back and numbness in her bilateral arms that travels down to her fingertips. [6-1] at 33. She said she could not stand for more than ten to fifteen minutes before needing to sit, cannot walk more than eight to ten steps without needing to rest, and cannot sit longer than two to three minutes before needing to adjust positions or stand. [6-1] at 33. She said she could not bend, squat, or twist her body without experiencing arthritic pain, and that, because of her numbness, she frequently drops objects and cannot handle change. [6-1] at 33. She said she could not lift more than a gallon of milk. [6-1] at 33–34. She also testified to mental impairments such as depression and memory loss. [6-1] at 34. The ALJ found that plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but plaintiff's statements about the intensity, persistence, and limiting effects were not entirely consistent with the medical and other record evidence. [6-1] at 34.

In particular, the ALJ noted that although medical evidence confirms plaintiff's complaints of arthritic pain, the record shows "limited treatment as to warrant greater functional limitations beyond those adopted herein." [6-1] at 34. The ALJ found that although plaintiff alleged pain and numbness and had some tenderness in her lumbar paravertebral and sacroiliac joint areas and had positive straight leg raises, she could heel-toe walk normally. [6-1] at 34. The ALJ said that although plaintiff consistently complained of chronic pain all over her body, "physical examinations were substantially normal," she said her current health state was "fair," and her treatment was "conservative," consisting of medication management

5

and referrals to neurosurgery, orthopedics, and rheumatology—though it was not documented whether she followed up on the referrals. [6-1] at 34. The ALJ noted that plaintiff had additional appointments with a pain management specialist and primary care physician and consistently complained of radiating lower back pain, associated numbness and tingling, fatigue, and difficulty in performing activities of daily living. [6-1] at 35. Plaintiff was admitted to a nursing home in September 2023, though the record does not give a medical reason why. [6-1] at 35. While there, her progress notes state that she had impaired lower extremity strength, impaired balance, strength, and gait, though she had no issues with functional strength, upper extremity strength and range of motion, hand grasping, or reaching. [6-1] at 35. The notes indicated that plaintiff was able to independently participate in activities of daily living and had a normal gait and range of motion in all four extremities. [6-1] at 35. Plaintiff also said she had minimal pain when on medication. [6-1] at 35.

The ALJ said that "while fibromyalgia syndrome was diagnosed … the record lacks sufficient clinical findings to support the diagnosis or the existence of fibromyalgia as a medically determinable impairment." [6-1] at 36. The ALJ said he still considered plaintiff's subjective complaints of pain. [6-1] at 36.

The ALJ also considered plaintiff's mental impairments. [6-1] at 36. He found that although plaintiff went to a neurologist complaining of short-term memory loss, the neurologist opined that there was a low likelihood for neurodegenerative process and attributed plaintiff's memory loss to an "underlying, and untreated, psychiatric condition." [6-1] at 36. He also found that although plaintiff endorsed symptoms of

6

depression and anxiety to her primary care physician, upon exam, plaintiff "consistently presented with normal mood as well as alert, coherent behavior," and reported that her symptoms improved with psychiatric medication. [6-1] at 36.

The ALJ found that plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with her treatment history and results of physical and mental status examinations. [6-1] at 36. The ALJ found that plaintiff's complaints of arthralgias, myalgias, muscle weakness, joint pain and swelling, and fatigue had minimal objective findings in the record. [6-1] at 37. The ALJ also found that some exams occasionally found tenderness in certain joints and areas and impaired lower extremity strength and impaired balance and gait, but that these findings were not consistently seen for a continuous period of twelve consecutive months. [6-1] at 37. Often, plaintiff could walk with a normal gait, had bilateral negative straight leg raises, had no sensory or motor deficits, had the ability to heel-toe walk, and had a normal range of motion. [6-1] at 37. Plaintiff often described her current health state as "fair"; her numbness and stiffness in her hands were "inconsistent with evidence in the record" showing plaintiff had no issues with functional strength, upper extremity strength and range of motion, hand grasping, or reaching; and she could perform activities of daily living independently. [6-1] at 37.

The ALJ found that, "due to consistently normal physical examinations, as well as objective findings showing a normal gait, no motor deficits, and normal range of motion in all extremities … the claimant has no limitations in her ability to sit, stand, or walk throughout an eight-hour workday." [6-1] at 38. The ALJ also found that

plaintiff's mental impairments were not supported by or consistent with the record in its entirety. [6-1] at 38–39.

The ALJ found the state agency records unpersuasive, because the consultants were not privy to all of the evidence in the record. [6-1] at 39.

At step four, the ALJ found that plaintiff was unable to perform any past relevant work. [6-1] at 40.

At step five, the ALJ concluded that, considering plaintiff's age, education, work experience, and residual functional capacity, there are jobs in significant numbers in the national economy that plaintiff could perform. [6-1] at 40–41. In other words, the ALJ found that plaintiff was not disabled. [6-1] at 41. The Social Security Appeals Council denied review of the ALJ's decision. [6-1] at 6–9. Plaintiff brought this suit seeking judicial review.

## III.   Analysis

An ALJ's decision need not specifically address every piece of evidence but must "build an accurate and logical bridge from the evidence to its conclusion." *Swiecichowski*, 133 F.4th at 756 (citations omitted). District courts will not reweigh the evidence or substitute its judgment for that of the ALJ. *Wilder*, 22 F.4th at 651. But an ALJ must articulate adequately the bases for his conclusions to demonstrate that he considered key evidence. *See Swiecichowski*, 133 F.4th at 759–60. I review the ALJ's decision for harmless error. *Wilder*, 22 F.4th at 654.

Plaintiff contends that the ALJ erred on two separate grounds. First, plaintiff argues that the ALJ did not properly evaluate plaintiff's fibromyalgia under guidance

from the Social Security Administration. [12] at 1, 3–9. Second, plaintiff argues that the ALJ's residual functioning capacity assessment is not supported by substantial evidence. [12] at 1, 10–14.

### A.     Evaluation of Plaintiff's Fibromyalgia under SSR 12-2p

Plaintiff faults the ALJ for excluding her alleged fibromyalgia from the list of impairments at step two, even though the ALJ found some severe impairments. More specifically, plaintiff argues that the ALJ failed to perform the required analysis in declining to find her fibromyalgia was a medically determinable impairment. The Commissioner argues that the ALJ considered plaintiff's fibromyalgia diagnosis but found the record lacked sufficient clinical findings to support the conclusion that fibromyalgia was a medically determinable impairment. He also argues that even if the ALJ erred, that any error was harmless because he considered plaintiff's symptoms anyway.

At step two, an ALJ must determine whether a claimant has a medically determinable impairment and, if so, whether that impairment is severe. 20 C.F.R. § 404.1521. A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques" rather than a claimant's own "statement of symptoms, a diagnosis, or a medical opinion." *Id.* But plaintiff has been diagnosed with fibromyalgia, a disease difficult to pin down—its "cause or causes are unknown, there is no cure, and, of greatest importance to disability law,

its symptoms are entirely subjective." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996).

Fibromyalgia is a "chronic health condition that causes pain all over the body and other symptoms." *Swiecichowski*, 133 F.4th at 757 (quoting *Kennedy v. Lilly Extended Disability Plan*, 856 F.3d 1136, 1137 (7th Cir. 2017)). Symptoms include severe fatigue, sleep problems, and problems with memory or thinking clearly. *Id.* Fibromyalgia "is notoriously difficult to assess because 'its symptoms are entirely subjective.'" *Id.* (quoting *Sarchet*, 78 F.3d at 306). And fibromyalgia pain "cannot be measured with objective tests aside from a trigger-point assessment." *Id.* (quoting *Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018)).

Because of the difficulty of assessing fibromyalgia, the Social Security Administration has issued guidance for evaluating it: Social Security Ruling SSR 12-2p, 2012 WL 3104869 (July 25, 2012). *Swiecichowski*, 133 F.4th at 757.[4] The guidance addresses how a claimant can establish fibromyalgia as a medically determinable impairment. *Id.*; SSR 12-2p, 2012 WL 3104869, at *1. The guidance lays out three diagnostic criteria: (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and (3) evidence that other disorders that could cause these repeated manifestations of

---

[4] Though they do not have the force and effect of law, Social Security Rulings are binding on ALJs. *Swiecichowski*, 133 F.4th at 757.

symptoms, signs, or co-occurring conditions were excluded. SSR 12-2p, 2012 WL 3104869, at *3.

The ALJ did not analyze plaintiff's alleged fibromyalgia under Social Security Ruling SSR 12-2p in step two. Instead, the ALJ discussed plaintiff's fibromyalgia diagnosis in step four, when he was determining plaintiff's residual functional capacity. Although he recognized that "fibromyalgia syndrome was diagnosed," he found that "the record lacks sufficient clinical findings to support the diagnosis or the existence of fibromyalgia as a medically determinable impairment." [6-1] at 36.

But the Social Security Administration requires ALJs to consider the claimant's history of widespread pain, manifestations of multiple fibromyalgia symptoms or co-occurring conditions, and evidence that other disorders causing these symptoms or conditions were excluded. The ALJ did not do so when determining medically determinable impairments and only discussed plaintiff's widespread pain in context of evaluating her residual functioning capacity. While failing to explicitly reference guidance is not by itself reversible error if the ALJ "nevertheless properly applied the requisite analysis," *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005), the ALJ did not apply the requisite analysis. There is support in the record for all three criteria.

As the ALJ noted, plaintiff has had subjective complaints of widespread pain. [6-1] at 36, 575 (pain in lower back radiating to legs, neck pain radiating to shoulder and through arms, pain in both elbows), 587 (chronic low back pain radiating through leg to foot), 592 (chronic low back, neck, and elbow pain, radiating through legs and

feet). There are also symptoms of at least six fibromyalgia symptoms: (1) numbness, [6-1] at 535, 549, 576, 583; [6-2] at 8, 33, 73, 80, 123, 141, 157, 291; (2) fatigue, [6-1] at 38, 532, 548, 578; [6-2] at 33, 37, 141, 259, 265, 274, 277, 307, 312, 325, 463; (3) depression, [6-1] at 28; (4) memory loss, [6-1] at 39, 79, 123, 429, 535; [6-2] at 49, 123, 156, 162; (5) headache, [6-1] at 196; [6-2] at 156, 161, 177, 185, 458; and (6) nervousness, [6-2] at 33, 37, 141, 307, 312, 325. Finally, as the ALJ himself noted, there are often no objective findings to explain plaintiff's alleged symptoms, excluding causes that could be determined based on objective tests. [6-1] at 34–37. A neurologist opined that there was a low likelihood for neurodegenerative process for plaintiff's memory loss—excluding at least one other cause for this symptom. Because there was some support that the third criterion could have been reached, it was error for the ALJ to fail to engage in the analysis under SSR 12-2p.

This error was not harmless. "In determining whether [a claimant's] physical or mental impairment or impairments are of sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, [the Commissioner] will consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 4040.1523(c). Leaving out a medically determinable impairment that has a wide array of hard-to-pin-down symptoms changes the analysis of cumulative impairments.

Although the ALJ considered plaintiff's pain, he also discounted plaintiff's subjective symptoms because her "physical examinations were substantially normal"

and other objective examinations were inconsistent with her reports. *See, e.g.*, [6-1] at 34, 36–37. But fibromyalgia symptoms are "entirely subjective," and "result[] in few physical manifestations." *Swiecichowski*, 133 F.4th at 758 (citing *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017)) (fibromyalgia patients have "normal muscle strength, sensory functions, reflexes, and joints"). In addition, in evaluating fibromyalgia as part of a residual functional capacity assessment, the ALJ must "consider a *longitudinal* record whenever possible because symptoms of [fibromyalgia] can wax and wane so that a person may have 'good days and bad days.'" *Id.* (quoting SSR 12-2p, 2012 WL 3104869, at *6) (emphasis in original). The ALJ here did not do so, beyond noting the lack of consistent findings across time.

If the ALJ found, after an analysis of the SSR 12-2p criteria, that plaintiff's fibromyalgia was a medically determinable impairment, the lack of objective reports or consistency would not necessarily determine what plaintiff's residual functional capacity was. For example, although the ALJ "considered the claimant's subjective allegations of pain in her upper extremities and numbness/stiffness in her hands," he also emphasized "objective findings showing a normal gait, no motor deficits, and normal range of motion in all extremities," and "record evidence that shows the claimant has no issues with functional strength, upper extremity strength/range of motion, hand grasping, or reaching" in finding that plaintiff had no limitations in her ability to sit, stand, or walk throughout an eight-hour workday and limiting the claimant to "frequent, but not constant, fine and gross manipulation." [6-1] at 38.

13

The ALJ also noted that exams that do show some issues "are not consistently seen for a continuous period of 12 consecutive months." [6-1] at 37. "But recall that manifestations of pain from fibromyalgia can 'wax and wane' (in other words, be inconsistent)." *Swiecichowski*, 133 F.4th at 759. Evidence in the record shows that plaintiff's pain was worse with walking, standing, and lifting. [6-1] at 575, 583. In particular, records show her pain gets worse when sitting and standing in the same position for more than five minutes. [6-1] at 587. She also sought treatment for pain twenty times between October 2020 and March 2024. [6-1] at 575, 583, 587, 591, 594; [6-2] at 33, 37, 73, 80, 98, 102, 133, 141, 168, 259, 277, 289, 312, 325, 463. Although an ALJ does not need to discuss "every medical visit or piece of medical evidence when assessing the impact of fibromyalgic pain on a claimant's functional capacity … given the unique nature of fibromyalgia and the large number of medical visits here, it is not clear from this record whether the ALJ evaluated the medical reports of [plaintiff's] pain holistically over time, keeping in mind that the symptoms of fibromyalgia may manifest in an *inconsistent* fashion." *Swiecichowski*, 133 F.4th at 759.

Had the ALJ recognized fibromyalgia as a medically determinable impairment, the ALJ would have had to look at the case differently, because the effects of fibromyalgia are not objectively identifiable and are inconsistent. *Id.* at 758–59. The failure of the ALJ to engage in the analysis required under SSR 12-2p was not harmless and requires remand.

14

### B.      Residual Functional Capacity Assessment

Plaintiff also argues that the ALJ erred because his residual functional capacity assessment was not supported by substantial evidence. A large portion of this argument stems from the failure of the ALJ to consider plaintiff's fibromyalgia as a medically determinable impairment, and the failure of the ALJ to consider plaintiff's symptoms in light of her fibromyalgia.

Because I find that the ALJ erred in not determining whether plaintiff's fibromyalgia was a medically determinable impairment pursuant to SSR 12-2p in step two, his residual functional capacity analysis may also be incomplete, depending on the outcome of the correct step two analysis. It is too early to determine whether his residual functional capacity analysis was supported by substantial evidence.

## IV.   Conclusion

Plaintiff's motion to remand the Commissioner's decision, [12], is granted. Enter judgment in favor of plaintiff, remanding the case to the administrative law judge for further proceedings. Terminate civil case.

ENTER:

Manish S. Shah
United States District Judge

Date: August 5, 2026